UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ABDUL-GIYATH O. MAYALE-EKE        :
                                  :
        v.                        :        C.A. No. 10-029S
                                  :
MERRILL LYNCH, PIERCE, FENNER     :
& SMITH, INC., d/b/a BANC OF      :
AMERICA INVESTMENT SERVICES,      :
INC., and JASON MISIANO           :

**MEMORANDUM AND ORDER**

Pending before me for determination (28 U.S.C. § 636(b)(1)(A)) are Plaintiff's Motion to Compel pursuant to Fed. R. Civ. P. 37 (Document No. 80) and Motion to Allow Time to Receive Requested Discovery pursuant to Fed. R. Civ. P. 56(d). (Document No. 79). Defendants object. (Document Nos. 84 and 85). A hearing was held on January 7, 2013.

This is an employment discrimination case in which Plaintiff alleges that he was disciplined and ultimately terminated "because of his race, color, national origin, and religion," and "treated less favorably than similarly-situated white investment specialists." (Document No. 69 at p. 7). The case was initiated in state court in early 2010 and promptly removed by Defendants to this Court due to the presence of a federal question under Title VII. See 28 U.S.C. §§1331 and 1441. This Court issued its standard Pretrial Order which originally set a discovery closure date of January 31, 2012 and provides that "[a]fter fourteen (14) days from the close of discovery, no motions – other than motions in limine – shall be filed except by leave of the undersigned," i.e., Judge Smith. (Document No. 24).

Discovery in this case was lengthy and contentious. There were several discovery motions filed and five lengthy hearings held before Magistrate Judge Martin on such Motions. Additionally, the original January 31, 2012 discovery closure date was extended several times. On May 31, 2012,

Magistrate Judge Martin extended the discovery deadline a final time to July 31, 2012 but advised the parties that there would be "no further extensions," and he described his Order as "a second and final written warning regarding compliance with scheduling deadlines." (Document No. 54). Since discovery closed on July 31, 2012, the deadline for filing motions without leave of Court pursuant to the Pretrial Order (other than motions in limine) expired on August 14, 2012. (See Document No. 24 at p. 2).

On September 12, 2012, Defendants moved for Summary Judgment on all of Plaintiff's discrimination claims. (Document No. 72). Plaintiff filed a timely opposition on October 3, 2012. (Document No. 75). After Defendants filed their reply brief and completed briefing on the Summary Judgment Motions, Plaintiff filed the instant Motion to Allow Time under Rule 56(d) on November 5, 2012 and Motion to Compel under Rule 37 on November 9, 2012. (Document Nos. 79 and 80). Plaintiff did not, however, seek or obtain leave of Court to file the Motion to Compel and thus it is untimely and was filed in contravention of the Pretrial Order, and it is rejected on those grounds. The Rule 56(d) Motion is a different situation, as that Motion is a mechanism provided under Rule 56 and directly related to the briefing of Defendants' Summary Judgment Motion.[1]

As to the information sought by Plaintiff, he contends that Defendants did not produce documents regarding QA scores that it "promised" to produce and did not produce all quarterly QA averages it was "ordered" to provide. On December 23, 2011, Magistrate Judge Martin granted Plaintiff's Motion to Compel as to Request No. 18 but only "to the extent that Defendant shall produce

---

[1] The Advisory Committee Notes to Rule 56(d) describe it as a mechanism to seek an "order deferring the time to respond to the summary-judgment motion." Here, Plaintiff did not seek to defer his time to respond and, in fact, was able to timely file a fifty-seven page Memorandum in Opposition and several hundred pages of Exhibits in response to Defendants' Rule 56 Motion. (See Document No. 75). Rather, he seeks an order requiring Defendants to produce certain information and then an opportunity to supplement his opposition to Defendants' Motion after receiving such information.

for the Relevant Period documents with quarterly QA scores for the Investment Specialists." (Document No. 41 at p. 3). Request No. 18 broadly sought "[a]ll documents created at any time showing the QA score or QA average of each and every investment specialist at the Lincoln Investment Center at any time between January 1, 2006, and December 31, 2008." (Document No. 35 at p. 8). Defendants objected to the Request on several grounds including overbreadth and undue burden. Id. After considering the positions of both sides, Judge Martin only ordered the production of "documents with quarterly QA scores" and it is reasonably apparent from listening to the hearing that Judge Martin did so because he considered production of all documents containing individual QA scores to be overly burdensome under these circumstances. Defendants' counsel represents that "charts containing quarterly quality assurance scores for investment specialists pursuant to the Court's December 23, 2011 Order" were produced on December 28, 2011. (Document No. 84-1 at p. 2).

Plaintiff has not shown that Defendants failed to produce the documents ordered to be produced by Judge Martin. Further, Plaintiff has not adequately explained why it took him over ten months (and over three months after the close of discovery) to pursue this claimed discovery violation. Plaintiff's present Motion is simply too little and too late.[2] Plaintiff has also not shown a breach of any "promise" to produce QA score documents. As support for this alleged promise, Plaintiff relies upon an October 14, 2001 letter from Defendants' counsel in which she indicated that her client will agree to provide QA scores for certain investment specialists. (Document No. 79-6 – filed under seal). However, the alleged "promise" was prefaced in the letter as an "attempt to compromise and to avoid a discovery

---

[2] When I pressed Plaintiff's counsel at the hearing as to the scope of his current request, he described it as a "short list of investment specialists and not burdensome for the defendants to produce" and estimated the list to include a dozen specialists. At the end of the hearing, I asked Plaintiff's counsel to submit the names to me in a letter within one week. He did so, and the estimate of one dozen ballooned to a list of 149 individuals. If the scope were truly 149, then this claimed deficiency should have been apparent months ago and raised prior to the close of discovery or at least prior to the deadline for filing discovery motions without leave of Court.

dispute." Id. Apparently, the attempted compromise was rejected because the dispute went forward and was the subject of a Motion to Compel, a hearing before Judge Martin on December 23, 2011 and a ruling issued on that same date. (See Document Nos. 35 and 41). It is apparent from his ruling that Judge Martin ordered a narrower production of documents in response to Request No. 18 than Plaintiff sought and than Defendants offered in an attempt to compromise the dispute. Plaintiff should not be rewarded at this late stage for his decision to reject what, in hindsight, was a reasonable offer from Defendants to resolve a discovery dispute.

Plaintiff also seeks certain national origin data. During discovery, Plaintiff sought national origin data as to certain investment specialists and managers. Defendants represented in response that it did not maintain such data. Plaintiff's counsel asserts that he recently discovered from reviewing his client's personnel records that Plaintiff completed a Form U4 to become a licensed securities representative and that such application required Plaintiff to disclose his country of birth. Plaintiff argues that such data is material to his ability to fairly defend Defendants' Rule 56 Motion since Defendants argue in such Motion that "the record is devoid of the national origin...of any investment specialist other than [Plaintiff], which will preclude Plaintiff from relying on comparators to establish that his termination was pretext for national origin...discrimination." (Document No. 72-1 at p. 18, n.6).

I agree with Plaintiff on this point. However, I find no basis to conclude that Defendants intentionally provided untruthful interrogatory responses or intentionally withheld the data contained in the Form U4s. It appears that both parties overlooked this single question on the Form U4 application during the discovery period and that Plaintiff's counsel only recently noticed it when reviewing documents. While country of birth is not necessarily equivalent to one's national origin, it is sufficiently probative to meet the standard for relevance in discovery under Rule 26(b)(1).

Accordingly, within fourteen (14) days, Defendant Merrill Lynch shall produce either the Form U4s (redacted to remove nonrelevant personal data) or the country of birth information contained on such forms for all Investment Specialists employed at the Lincoln Investment Center for the period June 1, 2007 through May 31, 2009, all managers and supervisors responsible for such Investment Specialists during the same period, and all individuals whose testimony, documents or reports are referred to or relied upon by Defendants in their pending Motion for Summary Judgment.

For the foregoing reasons, Plaintiff's Motion to Compel (Document No. 80) is DENIED, and Plaintiff's Motion to Allow Time (Document No. 79) is GRANTED in limited part as provided herein and otherwise DENIED. Plaintiff may supplement his Opposition to Defendants' Motion for Summary Judgment within fourteen (14) days after receiving the information ordered produced herein.

SO ORDERED

  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 22, 2013